**Marvin Douglas HURLEY, Plaintiff–Appellee,**

v.

**TENNESSEE FARMERS MUTUAL INSURANCE CO., Defendant–Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 2, 1995.

Application for Permission to Appeal Denied by Supreme Court March 25, 1996.

---

James F. Eggleston, Memphis, for Plaintiff–Appellee.

Andrew Hume Owens of Law Office of Don Owens, P.A., Memphis, for Defendant–Appellant.

CRAWFORD, Presiding Judge (Western Section).

This is a suit against an insurer for a vehicle theft loss. It is admitted that plaintiff had a valid policy of insurance in effect at the time of the loss. The defendant, Tennessee Farmers Mutual Insurance Company, asserts that the policy is void, because plaintiff made material misrepresentations in the application for insurance that materially increased the risk of loss. Alternatively, defendant argues that plaintiff breached the insurance contract provisions by failing to cooperate with the insurer as required by the contract in question.

The judgment on the jury verdict provides in pertinent part:

> The jury having heard all the evidence introduced at trial by the parties and having received the instructions of the Court, retired to consider their verdict. That the jury returned and stated in open court, in answer to questions submitted to them by the court, that they had found as follows: That the failure of the plaintiff to furnish the defendant with his income tax returns or checking or saving account records, as requested, was not an unreasonable failure to cooperate under his insurance policy so as to end the defendant's responsibility for the plaintiff's loss; that the plaintiff, Marvin Hurley, did not misrepresent facts contained in his Application for Insurance with the defendant, Tennessee Farmer's Mutual Insurance Company; that the plaintiff was entitled to receive the amount of $10,666.76 in actual damages under the terms of the insurance policy with the defendant; that the failure of the defendant to pay the said amount in damages to the plaintiff was not done in good faith; that the failure of the defendant to properly pay the plaintiff the amount owed in insurance coverage inflicted additional expenses, loss and injury upon the plaintiff; that using the additional expenses, loss and injury, found to have been suffered by the plaintiff, the plaintiff should be awarded additional damages of $1,800.

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that judgment be, and the same is hereby, entered in favor of the plaintiff, Marvin Douglas Hurley, against the defendant, Tennessee Farmer's Mutual Insurance Company, in the amount of $12,466.76.

Defendant filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The court granted the motion for judgment notwithstanding the verdict as to the $1,800.00 bad faith penalty and denied the motion in all other respects. The court approved the verdict of the jury in the amount of $10,666.76.

Defendant has appealed and in its brief presents three issues for review:

1. Whether the trial court erred in refusing to direct a verdict in favor of the defendant at the close of the proof on the issue of material misrepresentations in the application for insurance.

2. Whether the trial court erred in failing to direct a verdict at the close of the proof on the issue of the plaintiff's lack of cooperation concerning his refusal to provide three years of tax returns and one year of checking account records as requested by attorney for defendant, and in refusing to cooperate with an investigator with the defendant in the investigation of the claim.

3. Whether the trial court erred in failing to direct a verdict for the defendant on the cause of action of the plaintiff based on the homeowner's policy where there was no proof in the record as to the terms, conditions or provisions of said policy.

Plaintiff presents for review the additional issue of whether the trial court erred in granting judgment notwithstanding the verdict as to the bad faith penalty.

On October 2, 1990, plaintiff applied for and obtained a policy of automobile insurance

with defendant, Tennessee Farmers. At the time, plaintiff had a homeowners insurance policy with defendant and had also previously carried automobile insurance with defendant. The application form that plaintiff signed on October 2, 1990, had various questions to be answered yes or no by checking the appropriate box. According to the signed application introduced into evidence, the plaintiff answered the following questions as indicated:

(7) INSURED'S STATEMENT—HAS ANY DRIVER. (1–5)

(1) Had insurance cancelled or rejected? [answer no]

\* \* \* \* \* \*

(3) Had his driver's license revoked or suspended? [answer no]

(4) Ever had a vehicle that was stolen or burned? [answer no]

\* \* \* \* \* \*

(6) Been involved as a driver in an accident in last 3 years? [answer no]

The application also asked if the driver used the vehicle in his business to which the plaintiff answered "no."

In May of 1992, plaintiff's insured truck was stolen while he was inside Central Hardware in Memphis purchasing some fertilizer. An investigator with Tennessee Farmers became suspicious about the loss because of some of the statements that plaintiff made to him concerning the truck. Subsequently, pursuant to the terms of the insurance policy, Tennessee Farmers requested and obtained an examination under oath of both the plaintiff and his wife. During the course of Tennessee Farmers' investigation, it was determined that the above noted answers on the insurance application form were inaccurate, and that the correct answer should have been "yes" for each of the questions. Plaintiff's sworn statement was taken in August of 1992, and prior thereto plaintiff had been requested to provide the defendant insurer with his past three years tax returns and his

checking and savings account statements from the previous year. Plaintiff refused to produce these documents, stating that the documents were "none of their business." Because of the untrue answers on the application and lack of plaintiff's cooperation, Tennessee Farmers denied plaintiff's theft claim, and this suit ensued.

■ The first issue for review is whether the trial court erred in denying defendant's motion for directed verdict based on its defense of material misrepresentation in procurement of the policy.

Plaintiff's contention at trial was that he made no false answers, that he was not asked any questions by anyone and that a Tennessee Farmers employee simply told him to sign the blank application form to put the policy in effect.

Defendant asserts that there is no proof in the record to support plaintiff's contention that plaintiff signed the application form in blank. Defendant conceded in the trial court and in this Court that if the application was signed in blank then there were no material misrepresentations made by plaintiff which would void the policy.

Early in his direct examination, plaintiff testified that he did not recall the circumstances surrounding the signing of the application and does not remember anything about its execution.

On cross examination, plaintiff testified:

Q. Well you signed it [the application]. Didn't you?

A. I remember signing a sheet of paper, but I never answered any questions. I was never asked any questions.

Q. Well, Mr. Hurley, without reference to whether or not you gave these answers, did you sign a document that looks like this?

A. I have been with Farm Bureau since 1975. I walked in there. I figured I could trust them. I signed a piece of paper. She walked out there and looked at my

truck and said, okay. And that was it. I never was asked any questions. And I never answered any questions.

Plaintiff had previously filed an affidavit in connection with a motion for summary judgment in which he stated:

When I was directed to sign this application, the answers to the questions checked above my signature were either (1) checked by the agent without asking me these questions; (2) blank; (3) if I were asked these questions prior to my signature, in each instance in which the answer is incorrect, the information was incorrectly recorded by the agent.

Defendant introduced the testimony of Jennifer Altomare, the Tennessee Farmers' employee who took the application. She likewise testified that she had no specific recollection of Mr. Hurley applying for or signing the application, and that she does not remember whether she asked or he answered any questions. She stated that it was, however, her usual and customary practice to ask all the questions and note the answers before the application is signed. T.C.A. § 56–7–103 (1994) provides:

56–7–103. Misrepresentation or warranty will not avoid policy—Exceptions.— No written or oral misrepresentation or warranty herein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

 Whether the insured's answers to the questions on the application are true or untrue is to be determined by the trier of fact. *Womack v. Blue Cross and Blue Shield,* 593 S.W.2d 294, 295 (Tenn.1980). A determination of whether the false answers increase the risk of loss is a question of law for the court. *Id.* In the case before us, it is uncontroverted that the answers to the ques-

tions on the application set out above were false, but defendant's concession that if the application was signed in blank the false answers would not be a misrepresentation on the part of plaintiff raises the seminal question of whether the application was, in fact, signed in blank. Defendant argues that plaintiff's testimony provides no proof that the application was signed in blank, and that therefore, defendant should have been granted a directed verdict on its misrepresentation defense.

 When deciding a motion for directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. The court must discard all countervailing evidence, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. *Tennessee Farmers Mut. Ins. Co. v. Hinson,* 651 S.W.2d 235 (Tenn. App.1983). A directed verdict cannot be sustained if there is material evidence in the record which would support a verdict for the plaintiff under any of the theories plaintiff has advanced. *Wharton Transport Corp. v. Bridges,* 606 S.W.2d 521 (Tenn.1980).

In the instant case, the defendant had no proof that plaintiff signed the application after it was filled out. Plaintiff testified on direct examination that he did not have any recollection of the circumstances surrounding the signing of the application, but then, on cross examination, he testified that he remembered signing the paper but was never asked to answer any questions. He stated that he was told to sign the application form, then the Tennessee Farmers' representative looked at his truck and said, "Okay." The affidavit that he had filed earlier in the proceeding indicated that plaintiff was somewhat confused as to exactly what took place, but this confusion would not affect the admissibility of the evidence, it would only go to the weight of the evidence. Taking the strongest

legitimate view of the evidence and allowing all reasonable inferences in favor of plaintiff presents a factual issue as to whether plaintiff signed the application form in blank. Therefore, the trial court property denied defendant's motion for directed verdict on this issue.

■ Defendant's next issue is whether the trial court erred in denying its motion for directed verdict on its defense of breach of contract provision requiring the cooperation of the insured. Tennessee Farmers asserts that plaintiff's refusal to provide the income tax returns and cancelled checks, which Tennessee Farmers requested in August of .1992, breached two contract provisions of the insurance contract. The first provision states that anyone seeking coverage under the policy must "cooperate with us [Tennessee Farmers] and anyone we name in the investigation, settlement, or defense of any claim or suit." The second provision requires anyone seeking coverage under the policy to "promptly provide all records, receipts, and invoices, or certified copies of them and/or allow us [Tennessee Farmers] to copy them."

As stated above, at the time Tennessee Farmers took the plaintiff's sworn statement, plaintiff was requested to provide Tennessee Farmers with his tax returns from the past three years and his checking and savings account statements for the previous year. Plaintiff refused to provide this information, and Tennessee Farmers asserts that this was a breach of the above-quoted contract provision. Tennessee Farmers further argues that the proof is uncontroverted that the items were not produced, and that therefore, a verdict should have been directed for Tennessee Farmers.

■ Insurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally. *McKimm v. Bell,* 790 S.W.2d 526, 527 (Tenn. 1990). "A qualifying word which may be read into every contract is the word 'reasonable,' or its equivalent 'reasonably.' " *Moore v. Moore,* 603 S.W.2d 736, 739 (Tenn.App.

1980). Every contract contains an implied duty of good faith and fair dealing in its performance and enforcement. *TSC Industries, Inc. v. Tomlin,* 743 S.W.2d 169, 173 (Tenn.App.1987).

In the instant case, both plaintiff and his wife signed a blanket authorization in May, 1992, allowing Tennessee Farmers to obtain:

> [A]ny and all information, documents, and records that you may have regarding my personal salary, employment, credit union, finances, installment purchases, credit rating reports, bank accounts, debts, loans, mortgages, credit or charge accounts, purchases, real estate transactions, income and taxes, and tax return preparation information including accounts, ledgers, income statements, balance sheets or other documents and also any such documents concerning the business I own, none [written out] (if none write none) and also police, traffic, or accident reports to include personal or public records retained by any law enforcement agency or court of law relating to criminal arrest, convictions, or investigations and any and all medical records, charts, x-rays or reports. This Authorization also includes the release of any and all insurance company policies, records, applications, statements, claims information, or other documents.

> You are further expressly authorized to permit the above to obtain copies of any and all documents or records that they may request and to surrender possession of such documents to them for copying.

In light of plaintiff's previous blanket authorization allowing Tennessee Farmers to inspect and copy virtually any of plaintiff's financial records and Tennessee Farmers' examination of plaintiff under oath in August of 1992, we think reasonable minds could differ as to whether it was reasonable for Tennessee Farmers to require plaintiff to furnish his tax returns and bank records pursuant to the insurance provision requiring an insured to "promptly provide all records, receipts, and invoices." Tennessee Farmers could have obtained plaintiff's bank records and tax

returns pursuant to plaintiff's blanket authorization, yet it chose not to do so.[1] *See McKimm v. Bell,* 790 S.W.2d 526, 530–31 (Tenn.1990) (Plaintiff's failure to submit a written proof of loss was not a breach of the insurance policy cooperation clause where the insurer availed itself of the opportunity to fully question the insured regarding the nature, extent, and details of the accident). This being the case, reasonable minds could certainly differ as to the reasonableness of Tennessee Farmers' demand for production of the documents, and its assertion that the failure of plaintiff to produce such documents was a breach of the cooperation clause of the insurance contract. Since a dispute of material fact existed as to whether the insured complied with the cooperation clause, the trial court properly denied Tennessee Farmers' motion for directed verdict on this defense/issue.

■■■ Defendant's next issue for review, which we again quote from defendant's brief, is:

3. Whether the trial court erred in failing to direct a verdict for the defendant on the cause of action of the plaintiff based on the homeowner's policy where there was no proof in the record as to the terms, conditions or provisions of said policy.

This issue is somewhat confusing. This suit was filed by plaintiff against the defendant premised on a breach of the terms of an automobile insurance policy. During the course of the trial, an exhibit was entered showing a list of personal property which allegedly was in plaintiff's truck when it was stolen. The parties seem to concede that the automobile insurance policy does not cover these items of personalty, but that coverage would be provided under a homeowner's policy. There is some proof that plaintiff had a homeowner's policy in effect with the defendant at the time of the loss, but there is no homeowner's policy in evidence.

We have difficulty understanding how this question has arisen in this case, but, in any event, the record does not reflect that defendant made a motion for a directed verdict on the homeowner's policy cause of action. Therefore, defendant cannot now raise this issue for the first time on appeal. Moreover, we note that the jury's response to the special question concerning damages did not break down the damages between the loss of the truck and the loss of plaintiff's tools and other items of personalty contained in the truck. Thus, from the jury's damage award it is impossible to decipher whether the jury awarded damages at all for the tools, much less whether such damages were awarded pursuant to the automobile policy or the homeowner's policy.[2] Therefore, this issue is without merit.

■■■ The last issue for review presented by plaintiff is whether the trial court erred in granting Tennessee Farmers a judgment notwithstanding the verdict on the jury's award of the $1,800.00 bad faith penalty. T.C.A. § 56–7–105 (1994) provides in part:

(a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of the policy or fidelity bond; and

---

1. Furthermore, there is no evidence in the record indicating that Tennessee Farmers offered to pay any expense plaintiff would have incurred in furnishing the tax returns and bank records.

2. Neither party has complained about the amount of damages, although there certainly could be some question raised considering all the proof in the record.

provided further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.

The above statute is penal in nature and must be strictly construed. *St. Paul Fire and Marine Ins. Co. v. Kirkpatrick,* 129 Tenn. 55, 164 S.W. 1186 (1914); *Walker v. Tennessee Farmers Mut. Ins. Co.,* 568 S.W.2d 103 (Tenn.App.1977).

In *Palmer v. Nationwide Mutual Fire Insurance Company,* 723 S.W.2d 124 (Tenn. App.1986), this Court said:

> Under the holding of our courts, before there can be a recovery of penalty under T.C.A. § 56–7–105, (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.

723 S.W.2d at 126 (citations omitted).

There is no evidence in the record that plaintiff ever made a formal demand for payment or that plaintiff delayed in filing this suit for 60 days after the formal demand for payment was made. There is no proof in the record that plaintiff complied with the requirements of T.C.A. § 56–7–105, therefore, plaintiff is not entitled to recover a bad faith penalty. The trial court correctly granted the judgment notwithstanding the verdict.

The judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

HIGHERS and SUMMERS, JJ., concur.