# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

DAVID WAYNE GURIEN, )
)
      Plaintiff/Appellee, ) Davidson Chancery No. 95-20-I
)
VS. ) Appeal No. 01A01-9610-CH-00459
)
ALLSTATE INSURANCE COMPANY, )
)
      Defendant/Appellant. )

FILED

August 1, 1997

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

**MICHAEL P. MILLS**
**MICHELE E. COOPER**
**BREWER, KRAUSE, BROOKS & MILLS**
Nashville, Tennessee
Attorneys for Appellant


**KARYN C. BRYANT**
**JOHN D. VAUGHN**
**BOULT, CUMMINGS, CONNERS & BERRY**
Nashville, Tennessee
Attorneys for Appellee

**REVERSED**

                                            **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

In this breach of contract case, David Wayne Gurien ("Plaintiff") filed suit against Allstate Insurance Company ("Defendant") for Defendant's failure to compensate him for the theft of his automobile pursuant to the terms of the insurance contract that he had with the Defendant. The trial court awarded Plaintiff $18,300.00 in compensatory damages and $4,575.00 for the Defendant's bad faith refusal to pay under the terms of the insurance contract. A motion to alter or amend resulted in an adjustment of compensatory damages to $17,300.00 to account for the deductible. The issues on appeal relate only to the award of the bad faith penalty.

**FACTS**

On the evening of January 10, 1994, Plaintiff and his wife arrived home at approximately 10:00 p.m. after going out for dinner and a movie. After parking their car in its designated parking space near their condominium, Plaintiff and his wife went inside and went to sleep.

The next morning, Sunday, January 11, 1994, Plaintiff arose around 9:00 a.m., walked outside and allegedly discovered that his car had been stolen. Plaintiff immediately reported the theft to the police and then went about the area questioning his neighbors inquiring as to whether they had seen anything suspicious the night before.

After receiving a claim number from the police, Plaintiff called and notified the Defendant that his vehicle had been stolen.

The following Monday, January 12, 1994, the police recovered Plaintiff's car. The recovered car was charred and burned.

On January 13, 1994, Plaintiff and his wife completed and returned a sworn statement in proof of loss to the Defendant.

2

Shortly thereafter, Plaintiff received a letter dated July 19, 1994 from Defendant's attorney, Mills ("Mills"), requesting that Plaintiff schedule a date for him and his wife to visit Mills' office for an examination under oath concerning the events surrounding the theft. Upon arriving at Mills' office for the examination under oath, Plaintiff and his wife carried with them copies of canceled checks for payments on the vehicle and copies of their federal income tax returns from the past two years as requested by Mills. Plaintiff and his wife were separated and examined at different times during the examination under oath.

During the course of Defendant's investigation of Plaintiff's claim, Plaintiff visited Defendant's office three times inquiring as to the status of his claim. On August 15, 1994, Plaintiff's third visit to Defendant's office, Defendant verbally denied Plaintiff's claim. In a letter dated August 24, 1994, Defendant confirmed its verbal denial of Plaintiff's claim in writing stating that:

> It is the opinion of our Claim Department that this loss was not "accidental" from your standpoint. Further, it is our opinion that you breached the following clause of the policy: Fraud. We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy. Therefore, Allstate has no choice but to deny your claim for insurance proceeds.

Defendant's investigation of Plaintiff's claim revealed that Plaintiff's car, which had been burned, was left totally intact. None of the automobile's component parts had been removed. Based upon the opinion of the Defendant's expert witness, a forensic reconstructionist, neither the vehicle's lock assembly system nor the vehicle's ignition system had been defeated in any way, and nothing other than a key of the proper type had been used to unlock the doors of the vehicle or to operate the vehicle. All keys for the car were in the hands of the Plaintiff. Defendant's investigation also revealed that Plaintiff had many debts in comparison to his income.

In a letter dated October 21, 1994, Defendant canceled Plaintiff's automobile insurance policy as of December 7, 1994 citing Plaintiff's misrepresentation of loss for his July 10, 1994 claim as the reason for the cancellation.

3

Plaintiff argued that he and his wife did not have the only key to Plaintiff's automobile. Plaintiff claimed that Crencor Auto Sales ("Crencor"), the company from whom he bought the car, had a key to the car as well. Although Plaintiff testified that Crencor never supplied him with a second key to the car at the time he purchased the car and that Crencor retained an extra key to the car, Defendant testified that it was Crencor's policy to give all keys to cars sold to the purchaser at the time of purchase. Plaintiff also testified that he had supplied Crencor with a key to the car three months before the theft occurred when Plaintiff had Crencor repair the car, yet Plaintiff admitted that Crencor returned the key to him after working on the car.

Plaintiff filed suit on January 3, 1995 seeking compensatory damages and a sum equal to twenty-five percent of his compensatory damages for Defendant's bad faith refusal to pay pursuant to the terms of the insurance contract.

**LAW**

The issues before this Court are as follow:

1) Whether the trial court erred in denying Defendant's motion for a directed verdict as to Plaintiff's claim of the Defendant's bad faith refusal to pay under the terms of the insurance contract;

2) Whether the trial court erred in permitting the issue of the Defendant's bad faith denial of insurance coverage to be submitted to the jury; and

3) Whether the trial court erred in denying Defendant's motion for a new trial or judgment notwithstanding the verdict on the issue of the Defendant's bad faith refusal to pay pursuant to the terms of the insurance contract.

When deciding a motion for directed verdict, both the trial judge and the reviewing court on appeal must look to all of the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. Beske v. Opryland USA, Inc., 923 S.W.2d 544, 545 (Tenn. Ct. App.

4

1996); Dobson v. Short, 929 S.W.2d 347, 349-50 (Tenn. Ct. App. 1996); Wadlington v. Miles, Inc., 922 S.W.2d 520, 522 (Tenn. Ct. App. 1995); Hurley v. Tennessee Farmers Mut. Ins. Co., 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995); Bills v. Lindsay, 909 S.W.2d 434, 438 (Tenn. Ct. App. 1993); Daniels v. White Consolidated Indus., Inc., 692 S.W.2d 422, 424 (Tenn. Ct. App. 1985). The court must discard all countervailing evidence, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. Wharton v. Transport Corp. v. Bridges, 606 S.W.2d 521, 525 (Tenn. 1980); Crosslin v. Alsup, 594 S.W.2d 379, 380 (Tenn. 1980); Holmes v. Wilson, 551 S.W.2d 682, 685 (Tenn. 1977) Beske, 923 S.W.2d at 545; Dobson, 929 S.W.2d at 349-50; Hurley, 922 S.W.2d at 891; Bills, 909 S.W.2d at 438; Flynn v. Shoney's, Inc., 850 S.W.2d 458, 459-50 (Tenn. Ct. App. 1992); Tennessee Farmers Mut. Ins. Co. v. Hinson, 651 S.W.2d 235 (Tenn. Ct. App. 1983). A directed verdict cannot be sustained if there is any material evidence in the record which would support a verdict for the plaintiff under any of the theories plaintiff has advanced. Wharton Transport Corp. v. Bridges, 606 S.W.2d 521 (Tenn. 1980); Hurley, 922 S.W.2d at 891.

T.C.A. § 56-7-105(a) provides as follows:

> The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure inflicted additional expense, loss, or injury upon the holder of the policy or fidelity bond; and provided further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.

The foregoing statute is penal in nature and must be strictly construed. St. Paul Fire and Marine Ins. Co. v. Kirkpatrick, 164 S.W. 1186 (Tenn. 1914); Hurley, 922 S.W.2d at 894; Walker v. Tennessee Farmers Mut. Ins. Co., 568 S.W.2d 103 (Tenn. Ct. App. 1977).

In Palmer v. Nationwide Mut. Fire Ins. Co., 723 S.W.2d 124 (Tenn. Ct. App. 1986),

5

this Court stated:

> Under the holding of our courts, before there can be a recovery of penalty under T.C.A. § 56-7-105, (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.

723 S.W.2d at 126 (citations omitted).

In assessing the four requirements necessary for Plaintiff to recover a bad faith penalty against the Defendant, we note that there is no evidence in the record indicating that Plaintiff made a formal demand for payment after the Defendant denied Plaintiff's claim in writing in a letter dated August 24, 1994. Although Plaintiff initially completed all of the forms required by the Defendant and cooperated fully in answering questions regarding the theft, this does not meet the statutory requirement that a formal demand for payment must be made. See Kirkpatrick, 164 S.W. at 1189-1190; Walker, 568 S.W.2d at 106. T.C.A. § 56-7-105 is penal in nature and must be strictly construed; therefore, it is incumbent upon Plaintiff to show compliance therewith. Thus, because there is no proof in the record indicating that Plaintiff complied with the statutory requirements contained in T.C.A. § 56-7-105, the trial court should have directed a verdict in favor of the Defendant on Plaintiff's bad faith penalty claim. We, therefore, reverse the jury's verdict of $4,575.00 for the Defendant's bad faith.

The judgment of the trial court is hereby reversed as to Plaintiff's award of $4,575.00 for the Defendant's bad faith refusal to pay under the terms of the insurance contract. Costs of appeal are assessed against the Appellee for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
LILLARD, J.

7