IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 28, 1998 Session

**CORPORATE CATERING, INC. v.
CORPORATE CATERING, ETC., LLC, ET AL.**

**Appeal from the Circuit Court for Davidson County**
**No. 96C-903     Walter C. Kurtz, Judge**

---

**No. M1997-00230-COA-R3-CV - Filed March 20, 2001**

---

This appeal involves a dispute over the use of a defunct catering business's trade name and menu. The owner of the catering business filed suit in the Circuit Court for Davidson County seeking damages for conversion, breach of common-law copyright, and infringement of its business trade name and the distinctive names of its menu items. The trial court granted the defendants' motions for directed verdict regarding the conversion and the common-law copyright claims. After the jury returned a $12,500 verdict on the infringement of the trade name claim, the trial court granted the defendants' motion for a judgment in accordance with their motion for a directed verdict. In the alternative, the trial court, acting as thirteenth juror, set the verdict aside and granted a new trial. On this appeal, the defunct catering business asserts that the trial court erred by dismissing its claims for conversion and breach of common-law copyright. It also asserts that the trial court erred by failing to enter a judgment on the jury's verdict on the trade name claim. We have determined that the trial court decisions are supported by the law, and therefore, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

David O. Huff, Nashville, Tennessee, for the appellant, Corporate Catering, Inc.

Jay R. Slobey, Nashville, Tennessee, for the appellees, Corporate Catering, Etc., LLC and R. Michelle Blaylock.

**OPINION**

Joseph Cheek started a catering business in 1988 called Corporate Catering, Inc. to provide food service to private airplanes flying in and out of Nashville's airport. When this business proved successful, he began providing cafeteria service for several Nashville companies. By the early 1990s, Mr. Cheek's company had over $1,000,000 in revenue and employed approximately sixty

persons. Among the hallmarks of Mr. Cheek's business were the creative names he gave to the sandwiches and other items on his menu. These names included: the "San Fran Cristo," the "Key West Smuggler," the "Maui Wow," and the "Music City Jamwich."

Corporate Catering, Inc.'s success was short-lived. In 1992, Mr. Cheek made what he later characterized as a "bad business choice" when he contracted to provide on-site food service for a Nashville hotel. In November 1993, after losing approximately $250,000 on the hotel venture, Mr. Cheek placed Corporate Catering, Inc. in Chapter 11 bankruptcy.

Mr. Cheek met Michelle Blaylock several months after he had placed his company in bankruptcy. Ms. Blalock had heard about Corporate Catering, Inc. from a friend who worked at the Nashville Airport and was interested in buying the business. Mr. Cheek was discouraged with his reorganization efforts and was receptive to Ms. Blaylock's overtures. After several meetings in late October or early November 1994, Ms. Blaylock offered to buy Mr. Cheek's business for $25,000. Mr. Cheek rejected the offer, and the negotiations ended at that point. A short time later, Mr. Cheek converted the Chapter 11 proceeding to a Chapter 7 liquidation proceeding.

On November 29, 1994, Ms. Blaylock purchased most of Corporate Catering, Inc.'s tangible assets, as well as its telephone number, at a public auction conducted by the Chapter 7 bankruptcy trustee. Approximately four months later, on March 30, 1995, Ms. Blaylock incorporated Corporate Catering, Etc. LLC and opened for business at the same location and using the same telephone number that Mr. Cheek's business had used. Ms. Blaylock also based her menu on the menu that Mr. Cheek's business had used. Many of the names and descriptions of the menu items used by Ms. Blaylock were identical to the names and descriptions that Mr. Cheek had used.

In the meantime, Mr. Cheek, now doing business as Access Food Service, went to work for Nortel, one of Corporate Catering, Inc.'s former clients. He did all of Nortel's catering and ran the company's in-house cafeteria. Eventually, he became upset when he learned that Ms. Blaylock was calling her business "Corporate Catering" and that she was using many of the menu names and descriptions that he had created. In retaliation, Mr. Cheek began to disparage Ms. Blaylock's business and to tell others that Ms. Blaylock and her associates had stolen his business. In late November 1995, Mr. Cheek received a letter from Ms. Blaylock's lawyer insisting that he cease and desist using the name "Corporate Catering" and impugning Ms. Blaylock's integrity.

The letter from Ms. Blaylock's lawyer prompted Mr. Cheek, acting through Corporate Catering, Inc.,[1] to file suit in the Circuit Court for Davidson County in March 1996 against Corporate

---

[1] Mr. Cheek had not relinquished the corporate charter for Corporate Catering, Inc. in the bankruptcy proceeding and had maintained the charter in good standing even though the corporation transacted no business after November 1994.

Catering, Etc., LLC, Ms. Blaylock, and two of Ms. Blaylock's business associates.[2] He alleged that Ms. Blaylock and her company had converted and infringed his corporate trade name "Corporate Catering" and that they had also breached his common-law copyright covering the names and descriptions of his menu items. Even though Ms. Blaylock sold the business in March or April 1997 to become a "stay-at-home-mom," Mr. Cheek insisted on pressing his lawsuit forward.

The case was tried in July 1997. At the conclusion of Corporate Catering, Inc.'s case-in-chief, the trial court granted a directed verdict on the claim that Ms. Blaylock has converted the plaintiff's menu items. When Ms. Blaylock renewed her motion for a directed verdict at the close of all the evidence, the trial court directed a verdict on the common-law copyright claim. The remaining issue regarding trade name infringement went to the jury, and the jury awarded Corporate Catering, Inc. a $12,500 judgment against Ms. Blaylock and Corporate Catering, Etc., LLC. Thereafter, Ms. Blaylock and Corporate Catering, Etc., LLC moved for a judgment in accordance with their earlier motions for directed verdict and, in the alternative, for a new trial. On September 25, 1997, the trial court granted the motion for directed verdict on the trade name infringement issue because "Mr. Cheek presented no competent evidence by which a jury could find value for the trade name Corporate Catering, Inc." The trial court also expressly determined that, if its decision to grant the motion in accordance with the motion for directed verdict was in error, it would grant Corporate Catering, Etc., LLC and Ms. Blaylock a new trial "because the Court does not credit Mr. Cheek's testimony for the valuation of the common law trade name in this matter." Left with nothing to show for its efforts, Corporate Catering, Inc. has appealed.

## I.
### THE STANDARD OF REVIEW

Mr. Cheek takes issue with both the trial court's decision to grant a directed verdict dismissing his conversion and copyright claims involving the menu items and its decision to grant the motion in accordance with the motion for a directed verdict dismissing his business trade name infringement claim. On appeal we apply the same principles when we review a trial court's decision to grant either of these motions. *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977); *Kaley v. Union Planters Nat'l Bank*, 775 S.W.2d 607, 611 (Tenn. Ct. App. 1988); *Groover v. Torkell*, 645 S.W.2d 403, 409 (Tenn. Ct. App. 1982).

Directed verdicts under either Tenn. R. Civ. P. 50.01 or 50.02 are appropriate only when reasonable minds cannot differ as to the conclusions to be drawn from the evidence. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Eaton v. McClain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Ingram v. Earthman*, 993 S.W.2d 611, 627 (Tenn. Ct. App. 1998). A case should not be taken away from the jury, even when the facts are undisputed, if reasonable persons could draw different conclusions from the facts. *Gulf, M. & O.R. Co. v. Underwood*, 182 Tenn. 467, 474, 187

---

[2]Ms. Blaylock denied that the two other individual defendants were connected with the operation of Corporate Catering, Etc., LLC, and Mr. Cheek did not pursue his claims against these persons. Following the trial, Corporate Catering, Inc. dismissed these claims without prejudice.

S.W.2d 777, 779 (1945); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). A trial court may, however, direct a verdict with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's.

In appeals from a directed verdict, the reviewing courts do not weigh the evidence, *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992), or evaluate the credibility of the witnesses. *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993). Instead, they review the evidence in the light most favorable to the motion's opponent, give the motion's opponent the benefit of all reasonable inferences, and disregard all evidence contrary to that party's position. *Alexander v. Armentrout*, 24 S.W.3d at 271; *Eaton v. McClain*, 891 S.W.2d at 590; *Smith v. Bridestone/Firestone, Inc.*, 2 S.W.3d 197, 199 (Tenn. Ct. App. 1999).

A Tenn. R. Civ. P. 50.01 motion for directed verdict should not be granted if the evidence is sufficient to create an issue for the jury to decide. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999); *Norman v. Liberty Life Assurance Co.*, 556 S.W.2d 772, 773 (Tenn. Ct. App. 1977). Likewise, a jury's verdict should not be overturned in response to a Tenn. R. Civ. P. 50.02 motion in accordance with a motion for a directed verdict unless the evidence, including all the inferences that can reasonably be drawn from the evidence, does not support a verdict for the plaintiff under any of the theories that the plaintiff advanced at trial. *Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993); *Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342, 343 (Tenn. Ct. App. 1997).

## II.
### THE COMMON-LAW COPYRIGHT CLAIM

Corporate Catering, Inc. first asserts that the trial court erred by directing a verdict at the close of all the proof with regard to its claim that Ms. Blaylock wrongfully reproduced its menu containing distinctive menu items. It argues that these items were entitled to common-law protection and that it made out a prima facie claim of common-law copyright infringement. The fatal flaw with Corporate Catering, Inc.'s argument is that common-law copyright claims no longer exist.

Despite the fact that U. S. Const. art. I, § 8, cl. 8 empowers Congress to protect copyrights, the states have concurrent power to protect copyrights as long as their copyright protections do not conflict with federal law. *Goldstein v. California*, 412 U.S. 546, 559-60, 93 S. Ct. 2303, 2311 (1973). The states' regulatory prerogatives are still subject to preemption by Congress by virtue of the Supremacy Clause in U. S. Const. art. VI, cl. 2. However, prior to January 1, 1978, Congress had not occupied the field so completely that federal law displaced state law. Thus, up until 1978, state courts had jurisdiction to decide common-law copyright claims predicated on state law. *State Dep't of Health and Rehabilitative Servs. v. Southpointe Pharmacy*, 636 So. 2d 1377, 1379 (Fla. Dist. Ct. App. 1994).

Congress shifted the balance of power between the federal and state governments with regard to the enforcement of copyrights when it amended the Copyright Act in 1976. These amendments reflected Congress's express intention to preempt state copyright regulation in any area where the federal copyright statutes apply. *Jacob's Wind Elec. Co. v. Department of Transp.*, 626 So. 2d 1333, 1336 (Fla. 1993). Accordingly, 17 U.S.C.A. § 301(a) (West 1996) states:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

Thus, from and after January 1, 1978, the federal Copyright Act is the only source of protection against copying of copyrightable material. *Bridgeman Art Library, Ltd. v. Corel Corp.*, 25 F. Supp. 2d 421, 429 (S.D.N.Y. 1998).

As broad as the language of 17 U.S.C.A. § 301(a) is, it does not preempt state claims involving rights that are not equivalent to the rights protected by the federal copyright statutes. For preemption to apply, the state law claim must fit the "subject matter requirement"[3] and the "general scope requirement"[4] of 17 U.S.C.A. § 301(a). *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997). The "subject matter requirement" relates to the nature of the work in which these rights are being claimed; while the "general scope requirement" relates to the nature of the rights granted under state law. 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1], at 1-10 (2000) ("*Nimmer on Copyright*").

When called upon to determine whether federal copyright law preempts a state claim, the courts employ a two-part test. First, they determine whether the subject matter of the state claim falls within "subject matter of copyright as specified in sections 102 and 103." Second, they determine whether the state claim protects rights equivalent to any of the exclusive rights of a federal copyright. *Daboub v. Gibbons*, 42 F.3d 285, 288-89 (5th Cir. 1995); *Butler v. Continental Airlines, Inc.*, 31 S.W.3d 642, 650 (Tex. App. 2000). A state law claim is "equivalent" to federal copyright law rights if the elements of the state claim would not establish qualitatively different conduct by the defendant,

---

[3] This requirement is derived from the portion of 17 U.S.C.A. § 301(a) limiting the provision to "works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified in sections 102 and 103."

[4] This requirement is derived from the portion of 17 U.S.C.A. § 301(a) including within the statute's coverage "all legal or equitable rights that are equivalent" to one of the bundle of exclusive rights already protected by the federal copyright laws under 17 U.S.C.A. § 106.

than the elements for an action under the Copyright Act. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999); *Yost v. Early*, 589 A.2d 1291, 1302 (Md. Ct. Spec. App. 1991).

Even if we were to assume that Corporate Catering, Inc.'s menu and menu items were copyrightable,[5] there are two reasons why its common-law claim must fail. First, state common-law actions for copyright infringement no longer exist. *Robert H. Jacobs, Inc. v. Westoaks Realtors*, 205 Cal. Rptr. 620, 623 (Ct. App. 1984); *Evans v. Lerch*, 700 N.Y.S. 2d 400, 402 (Sup. Ct. 1999). Thus, a cause of action for common-law copyright fails to state a claim upon which relief can be granted. *Rommel v. Laffey*, 194 F.R.D. 441, 444 (N.D.N.Y. 2000); *Patrick v. Francis*, 887 F. Supp. 481, 483-84, 486-87 (W.D.N.Y. 1995). Second, even if the language in Corporate Catering, Inc.'s complaint could be stretched to assert some other common-law cause of action, it would clearly be preempted by the Copyright Act because the claim falls within the subject matter of 17 U.S.C.A. § 102 and because it undertakes to project rights that are protected by the federal copyright act.[6] Accordingly, the trial court correctly directed a verdict on Corporate Catering, Inc.'s common-law copyright claim at the close of all the proof.

### III.
### THE MENU CONVERSION CLAIM

Corporate Catering, Inc. also asserts that the trial court erred by directing a verdict on its claim that Corporate Catering, Etc., LLC converted its menu. It asserts that the "copying and subsequent use of its menu constitute[d] conversion." The trial court directed a verdict on the ground that Corporate Catering, Inc. had failed to prove that the descriptive terms used in the menu had acquired a secondary meaning in the market. We agree with the trial court's decision to direct a verdict on this claim; however, we rest our decision on different grounds.[7]

The two restauranteurs in this case are not fighting over tablecloths or kitchen equipment. Their dispute involves intellectual property rights – an elastic legal term connoting products of the human mind. The term implicates such things as patents, trademarks, copyrights, and trade secrets. Properly characterized, intellectual property is a species of intangible personal property. It is property that one can own that is not physical, as opposed to tangible personal property that can be seen, felt, weighed and measured.

---

[5] *See, e.g., TGI Friday's Inc. v. National Restaurants Mgm't Inc.*, No. 91 Civ. 5412, 1992 WL 164445, at *1, 3 (S.D.N.Y. June 24, 1992) (involving a copyright infringement action over a menu).

[6] Corporate Catering, Inc.'s claims that Ms. Blaylock and Corporate Catering, Etc., LLC misappropriated its unique menu by reproducing and distributing the menu as part of its own business. These acts undoubtedly constrain a right within the general scope of the Copyright Act. 1 *Nimmer on Copyright* § 1.01[B][1], at p. 1-20.3, 1-20.5, 1-20.6.

[7] The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Allen v. National Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

Understanding that intellectual property is intangible personal property matters in this case. Conversion, by law, is the wrongful appropriation of another's tangible property. *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995); Restatement (Second) of Torts § 222A(1) (1965). Although many jurisdictions hold otherwise, Tennessee is among the jurisdictions that have declined to recognize a civil cause of action for conversion of intangible personal property. *B & L Corp. v. Thomas & Thorngren, Inc.,* 917 S.W.2d at 680; *B & L Corp. v. Thomas & Thorngren, Inc.*, No. 01A01-9506-CH-00274, 1996 WL 518079, at *4 (Tenn. Ct. App. Sept. 13, 1996) (No Tenn. R. App. P. 11 application filed); *accord Marley Co. v. Fe Petro, Inc.*, 38 F. Supp. 2d 1070, 1077-78 (S.D. Iowa 1998); *MBF Clearing Corp. v. Shine*, 623 N.Y.S.2d 204, 206 (App. Div. 1995).

Ms. Blaylock and Corporate Catering, Etc., LLC moved for a directed verdict on all claims at the close of Corporate Catering, Inc.'s case-in-chief. Attempting to give Corporate Catering, Inc. every benefit of the doubt, the trial court appears to have analogized its conversion claim to a trademark infringement claim involving the menu items. However, Corporate Catering, Inc. did not include a trademark infringement claim in its complaint, and there is no evidence that the parties were trying a trademark infringement claim by consent.[8] Courts do not have the responsibility to create and then adjudicate claims that the parties have not pleaded. *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977). Accordingly, we will treat Corporate Catering, Inc.'s claim as precisely what it is – a claim for conversion.

Corporate Catering, Inc.'s conversion claim fails to state a claim upon which relief can be granted because the property allegedly converted is intangible personal property. Accordingly, the trial court reached the correct result when it directed a verdict on the menu conversion claim at the close of Corporate Catering, Inc.'s case-in-chief. The trial court properly declined to send to the jury a claim that our law does not recognize.

## IV.
### THE TRADE NAME INFRINGEMENT CLAIM

The final, and most substantial issue in this appeal, involves Corporate Catering, Inc.'s claim that Ms. Blaylock and Corporate Catering, Etc., LLC wrongfully misappropriated its business name. Corporate Catering, Inc. originally prevailed on this claim, but the trial court set the judgment aside and entered a judgment in favor of Ms. Blaylock and Corporate Catering, Etc., LLC after concluding that Corporate Catering, Inc. failed to prove that its business name, "Corporate Catering," had any value. We have concluded that the trial court reached the correct result. However, while our analysis also focuses on Corporate Catering, Inc.'s proof of damages, we have determined that the problem with its proof is not so much one of quality as it is one of kind.

---

[8]A claim not articulated in a pleading may be considered when it is tried by the parties' mutual consent. *Braden v. Varnell*, 871 S.W.2d 690, 692-93 (Tenn. Ct. App. 1991). Merely introducing evidence of facts that could be relevant to a claim that has not been pleaded is not tantamount to trying the claim by consent. *Hiller v. Hailey*, 915 S.W.2d 800, 805 (Tenn. Ct. App. 1995).

Even though the two corporations had distinctively different names, the common, short form of both their names is "Corporate Catering." Corporate Catering, Inc. claims that "Corporate Catering" uniquely refers to its business and, therefore, that Ms. Blaylock and Corporate Catering, Etc., LLC was illegally usurping its business or trade name. At trial, Corporate Catering, Inc. went about proving its damages as if it were proving damages for the conversion of personalty. It presented evidence of the value of the property that the defendants allegedly took. Accordingly, Mr. Cheek, as Corporate Catering, Inc.'s sole stockholder, gave his opinion that the name "Corporate Catering" was worth $50,000 to him – a figure that the jury obviously did not accept. From that time until this, the parties have been arguing about the admissibility of Mr. Cheek's testimony, its weight, and its foundation or lack thereof. We have concluded that the real problem with this evidence is that it does not track the measure of damages applicable to claims for infringement of a business or trade name.

**A.**

A trade name is a word, name, symbol, device, or combination thereof used by an enterprise to identify its business and distinguish itself from other similar businesses. *Men of Measure Clothing v. Men of Measure*, 710 S.W.2d 43, 46 (Tenn. Ct. App. 1985). A trade name that becomes established in the public's mind can have great value. Accordingly, trade names are entitled to legal protection (1) to protect the business owner's established good will, (2) to protect the consuming public from being misled, and (3) to encourage and promote fair competition in the marketplace. *Inka's S'coolwear v. School Time, LLC*, 725 So. 2d 496, 500 (La. Ct. App. 1998).

The damages available for trade name infringement are intended to make it financially futile for a competitor to attempt to benefit from another's business identity. The purpose of these damages is to neutralize any financial gain the infringer may realize. Accordingly, the measure of damages in cases of this sort includes one or more of the following: (1) an award based on the infringer's profits,[9] (2) an award based on the trade name owner's actual business damages, including lost profits, and (3) punitive damages for the purpose of punishing the infringer. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:57 (2000).

The law considers the infringer's profits from the wrongful use of another's trade name as money wrongfully diverted from the legitimate owner of the trade name. 2 Harry D. Minns, *The Law of Unfair Competition and Trademarks* § 424 (4th Ed. 1947). Thus, as a general matter, the law requires an infringer of a trade name to make an accounting to the trade name's owner of any profits it has realized from the wrongful use of the trade name. *Church of God v. Tomlinson Church of God*, 193 Tenn. 583, 597, 247 S.W.2d 63, 69 (1952); *see also California Prune & Apricot Growers, Ass'n v. H.R. Nicholson Co.*, 158 P.2d 764, 773-74 (Cal. Dist. Ct. App. 1945); *Robert Reis & Co. v. Herman B. Reiss, Inc.*, 63 N.Y.S.2d 786, 808 (Sup. Ct. 1946). This accounting provides a means for quantifying the benefit that the infringer obtained by wrongfully using another's trade name.

---

[9] The infringer's profits is one permissible way to measure the trade name owner's loss or to measure the damages on an unjust enrichment theory.

**B.**

Corporate Catering, Inc. presented no evidence during its case-in-chief showing that Ms. Blaylock of Corporate Catering, Etc., LLC benefitted from using the name "Corporate Catering." It appears to have been Mr. Cheek's unarticulated assumption that the name must have had some value because of the pride he associated with it. The evidence, however, belies Mr. Cheek's assumption. Ms. Blaylock testified categorically that using the name was of no benefit. In fact, she testified that using the name "Corporate Catering" caused her many business problems.[10] She concluded her testimony by stating emphatically that she would never have used the name "Corporate Catering" if she had things to do over again.

The rest of the evidence is of the same tenor. During her cross-examination, for example, Ms. Blaylock testified that she had placed a value on her business of $70,000, and she attributed none of this value to the name "Corporate Catering." In addition, a certified public accountant testifying on Ms. Blaylock's behalf, testified that he had reviewed the business records of both Corporate Catering, Inc. and Corporate Catering, Etc., LLC and that he had concluded that the name "Corporate Catering" had no good will value to Corporate Catering, Etc. LLC.

The party seeking damages has the burden of proving them. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). Damages cannot be awarded when the existence of damage is uncertain. *Pinson & Assocs. Ins. Agency v. Kreal*, 800 S.W.2d 486, 488 (Tenn. Ct. App. 1990); *Jennings v. Hayes*, 787 S.W.2d 1, 3 (Tenn. Ct. App. 1989). Accordingly, there can be no award of damages in any amount without adequate evidence. *Grantham & Mann, Inc. v. American Safety Prods., Inc.*, 831 F.2d 596, 601 (6th Cir. 1987) (applying Tennessee law).

Mr. Cheek's opinion that the name "Corporate Catering" was worth $50,000 prior to his company's bankruptcy shed no evidentiary light on what benefit, if any, Ms. Blaylock and Corporate Catering, Etc., LLC derived from using the name after Mr. Cheek's company was liquidated in bankruptcy. All of the uncontroverted evidence at trial supports a conclusion that the name "Corporate Catering" did not benefit Ms. Blaylock or her company. Accordingly, using the proper measure of damages for trade name infringement, this court concludes that Corporate Catering, Inc. failed to prove that it had been damaged by another's use of its trade name. Because of the absence of competent evidence of damages, the trial court properly granted Ms. Blaylock and Corporate Catering, Etc., LLC's motion for a judgment notwithstanding the verdict.

---

[10]Ms. Blaylock was quite specific regarding the problems arising from her use of the "Corporate Catering" name. She testified: "I can't tell you how many telephone calls I got a day looking for Mr. Cheek, creditors, I had people coming by looking for Mr. Cheek. Anywhere from policemen, all the way down to – I mean people that had done business with him in the past that were very angry because they had been left out with a lot of money."

**V.**

We affirm the directed verdicts dismissing Corporate Catering, Inc.'s claims for conversion and common-law copyright infringement and the judgment notwithstanding the verdict with regard to Corporate Catering, Inc.'s trade name infringement claim. We remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to Corporate Catering, Inc. and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE