IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2000 Session

# CHARLES W. SHOFFNER v. BILLY HARDWICK ENTERPRISES, INC.

**Direct Appeal from the Circuit Court for Shelby County
No. 72085 T.D. George H. Brown, Jr., Judge**

---

**No. W1999-01609-COA-R3-CV - Filed December 27, 2000**

---

This is a slip and fall case. The plaintiff was injured while bowling at the defendant's bowling alley. While he was bowling, his beeper fell from his belt onto the bowling lane. The plaintiff crossed the foul line to retrieve his beeper, and slipped on the oiled surface. He sued the bowling alley for his injuries, asserting that the bowling alley failed to adequately warn him of the danger of crossing the foul line. The trial court granted a directed verdict in favor of the defendant, finding that the bowling alley had no duty to warn the plaintiff, and that the plaintiff was more than 50% at fault for the accident. The plaintiff appeals. We affirm, finding that, under the undisputed facts, the plaintiff was more than 50% at fault for the accident.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and ALAN E. HIGHERS, J. joined.

John R. Candy, Cordova, Tennessee, for the Appellant, Charles W. Shoffner.

James F. Eggleston, Memphis, Tennessee, for the Appellee, Billy Hardwick Enterprises, Inc.

**OPINION**

On August 25, 1994, Plaintiff/Appellant Charles W. Shoffner ("Shoffner") was injured while bowling at Billy Hardwick's All Star Lanes, a bowling alley owned by Defendant/Appellee Billy Hardwick Enterprises, Inc. ("Bowling Alley"). Shoffner was a member of a bowling team sponsored by his employer, Mid-South Restoration Company ("Mid-South Restoration"), which had entered into a league competition at the Bowling Alley.

While bowling in the competition, Shoffner inadvertently knocked his beeper from his belt onto the bowling lane, several feet beyond the foul line. Shoffner then moved quickly beyond the foul line onto the surface of the bowling lane to retrieve his beeper. As he did so, he slipped on the oiled surface of the bowling lane, lost his footing, and fell, sustaining injuries.

Subsequently, Shoffner filed a negligence action against the Bowling Alley and Billy Hardwick, president of the corporation. Shoffner alleged that his injuries had been caused by the defendants' negligence in, *inter alia*, preparing the bowling lane so that it constituted an unsafe and hazardous condition, and failing to provide adequate warning of the danger of crossing the foul line. Shoffner later voluntarily dismissed his suit against Billy Hardwick, leaving only his cause of action against the Bowling Alley.

A jury trial was held. At the trial, Shoffner testified that he arrived at the bowling alley between 6:30 and 7:00 on the evening of the accident. When he arrived, he saw that the twenty teams scheduled to participate in the league competition were already in place at their respective bowling lanes. He was directed to Lane 19, where he found the other four members of his team waiting for him. The teams began bowling almost immediately after he arrived. When it was Shoffner's turn to bowl, he accidentally knocked his beeper from his belt as he swung his arm past his hip to release the ball. Shoffner testified that the beeper was flung several feet down the lane, and he heard several observers snicker. Embarrassed and conscious of holding up the game, Shoffner quickly walked out onto the lane, past the foul line, in order to retrieve his beeper. He took one step onto the surface of the lane and began to take a second step when his feet suddenly slid out from under him on the slick, oiled surface of the lane. Shoffner fell on his head and neck, rupturing a disc in his neck.

Shoffner testified that he was a novice bowler, but was aware that bowlers were prohibited from crossing the foul line. However, he insisted that he thought it was a rule of the game, and did not know of any danger in walking beyond the foul line. He testified that he was not aware that the bowling lane was oiled, or that its surface would be slick. There were no signs posted to instruct bowlers not to cross the foul line, or warning of the danger in doing so.

Shoffner admitted that the wooden surface of the bowling lane, just beyond the foul line, was shinier than the wooden surface of the approach area. He testified that he had assumed that the bowling lane had a polyurethane finish on it, to protect the wood surface, but in his experience polyurethane coatings were not slick or dangerous to walk on. He had not known that there was oil on the lane, and it did not appear oily to him. He stated that had he known that the surface was slippery with oil, he would not have crossed the foul line. He also said that had he seen any kind of sign warning against crossing the foul line, he would not have done so.

Prior to the beginning of the game, there was an instructional pre-league meeting that all bowlers were supposed to attend. Shoffner testified that he had not known of the meeting; he arrived late and missed it. Shoffner said that he had to attend a Parent-Teacher Association meeting for his son, and he arrived at the Bowling Alley just in time to begin bowling.

On cross-examination, Shoffner acknowledged that during an earlier deposition he stated that he thought the lanes were waxed, and that he presumed that wax can be slippery. He also admitted that he should have called an employee of the bowling alley to retrieve the beeper for him.

A member of a team that bowled against Shoffner's team, Jeff Floyd ("Floyd"), testified that Shoffner came late, after the pre-league meeting had already been held, and the first frames of practice balls had been bowled. Floyd described Shoffner's fall:

> He was on the approach, went to throw his ball down the lane. As he did, his hand with the ball hit the pager that was on his belt or pocket on his side. The pager flew down the lane landing in the gutter. When it did that, he turned around and kind of laughed and just took off down the lane after it.
> He probably took, oh, I am not sure how many pretty quick steps, two or three or four or five, six steps maybe 10 or 12 feet down the lane. And when he went to stop, his feet flew up in the air, and he landed it looked like on his upper body and his head hit the ground.

A member of Shoffner's bowling team, Billy Joe Stewart ("Stewart"), testified that Shoffner hurried out onto the bowling lane to retrieve his beeper, flung approximately ten feet onto the lane. Stewart said that Shoffner didn't break into a "full run," but that he "stepped out there quickly."

At the close of the Shoffner's case in chief, the Bowling Alley moved for a directed verdict, arguing that Shoffner had failed to demonstrate that the Bowling Alley had any duty to warn Shoffner of the condition of the lane, or that the Bowling Alley had breached the standard of care by failing to provide signs warning of the oiled condition of the bowling lanes. The trial court reserved its ruling on the motion until after the Bowling Alley's proof.

The Bowling Alley presented proof of two meetings prior to the bowling game in which those attending were told that participants were not to cross the foul line. John Scott ("Scott"), President of the Bowling League, testified that the first meeting, held approximately one week before the games started, was attended by the captains of the participating twenty teams. The second meeting was held on the evening that the games started, and all bowlers were expected to attend. Scott said that the foul line rule was covered at both meetings, and bowlers were instructed not to cross the foul line. Scott testified that the bowling lanes were visibly slick, and in twenty years experience with bowling, he had seen people cross the foul line only four or five times.

The owner of the Bowling Alley, Billy Hardwick ("Hardwick"), also testified. Hardwick was a former professional bowler, having spent seventeen years on the professional bowling tour in the 1960's and 1970's. He had operated the Bowling Alley for approximately seventeen years. Hardwick explained that the bowling lanes in a bowling alley are oiled at least once a day to protect the wood and to enable the bowlers to achieve optimum bowling scores. He said that, after the lanes are oiled, they appear "very shiny." Hardwick testified that, in forty years of bowling, he had seen only a few people cross the foul line, and fewer than five people fall.

Hardwick acknowledged that in August 1994, there were no signs warning bowlers not to cross the foul line. He said that he thought such signs were not necessary. He testified that the bowlers were verbally instructed not to cross the foul line in the pre-league meetings, held one week

-3-

prior to competition, attended by the team captains, as well as the pre-league meeting on the first night of competition. In addition, a packet of typed rules and instructions, admonishing bowlers not to cross the foul line, was handed out to each team captain with the understanding that it would be shared with team members. Hardwick testified that, in his experience, some bowling alleys had signs warning against crossing the foul line, while others did not.

At the close of its proof, the Bowling Alley renewed its motion for a directed verdict. The trial court granted the Bowling Alley's motion, finding that the Bowling Alley, as a matter of law, did not owe Shoffner any duty to warn him of the condition of the bowling lane, due to the open and obvious nature of the risk, and the lack of foreseeability of the accident. The Court further found that, even had the Bowling Alley owed such a duty to Shoffner, reasonable minds could not differ that Shoffner's negligence exceeded that of the Bowling Alley. Shoffner now appeals the trial court's order directing a verdict in favor of the Bowling Alley.

On appeal, Shoffner first argues that the trial court erred by finding that the Bowling Alley had no duty to warn him of the danger of crossing the foul line. Shoffner contends that a duty to warn existed since the likelihood and gravity of harm caused by the Bowling Alley's failure to post warning signs far exceeds the burden on the Bowling Alley to post warning signs.

Shoffner also argues that the trial court erred in finding that his negligence was greater than the Bowling Alley's negligence. Shoffner contends that reasonable minds could differ as to whether he was more than 50% at fault for the accident, and therefore, the trial court should have submitted the case to the jury.

In deciding a motion for directed verdict, the court must look to all the evidence, take the strongest legitimate view of the evidence in favor of the non-movant, and allow all reasonable inferences in favor of that party. All countervailing evidence must be discarded, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. App. 1995).

We consider first the trial court's holding that, even assuming the Bowling Alley had a duty to post warning signs of the danger of crossing the foul line, Shoffner's negligence was greater than 50%, thereby precluding him from recovering from the Bowling Alley. *See McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). In this case, Shoffner testified that he was aware of the rule against crossing the foul line. He acknowledged that the lane appeared shiny to him, and that he believed that bowling lanes were waxed. He admitted that he had presumed that wax could be slippery. By his own account, Shoffner was embarrassed and anxious to get the beeper off the lane as quickly as possible, so that the interruption of play would be minimal. Two of Shoffner's witnesses testified that Shoffner took rapid steps out onto the bowling lane in an effort to retrieve the beeper quickly. Shoffner admitted that he should have called an employee of the Bowling Alley to retrieve the beeper. Under these undisputed facts, reasonable minds could only conclude that Shoffner was

negligent, and that he was more than 50% at fault for the accident. The trial court's decision is affirmed on this basis. The remaining issues raised by Shoffner are pretermitted.

The decision of the trial court is affirmed. Costs are assessed against the Appellant, Charles W. Shoffner, and his surety, for which execution may issue, if necessary.

_____

HOLLY KIRBY LILLARD, J.