FILED
02/07/2018
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 5, 2017 Session

## ALECIA GAYNELL KING McKAY v. MICHAEL PATRICK McKAY

**Appeal from the Chancery Court for Williamson County**
**No. 37745     Deanna B. Johnson, Chancellor**

---

### No. M2016-01989-COA-R3-CV

---

This post-divorce action primarily involves a provision in the parties' marital dissolution agreement ("MDA") concerning disposition of the marital residence. The parties were divorced in 2011. The wife filed a petition in March 2015, seeking, *inter alia*, to enforce the divorce decree and MDA by obtaining an order requiring the husband to vacate the marital residence so that she could reside there with the parties' minor child and her three foster children. The MDA provides that the wife is to retain sole and exclusive possession of the marital residence until it is sold while the husband is to deposit one-half of the monthly mortgage payment into the wife's personal checking account each month "in lieu of" spousal support. The MDA also provides that the marital residence would not be placed on the market for sale until January 1, 2013, but it does not supply a deadline by which the parties would have to place the home on the market. At the time that the wife commenced this action, the wife had vacated the home, and the husband had been residing there for approximately one year. Following a bench trial conducted in May 2016, the trial court granted the wife's petition to enforce the MDA, entering an order directing the husband to vacate the marital residence immediately and to make needed repairs to the home. The court also found that a purported post-divorce oral agreement between the parties for the husband to purchase the wife's share of the marital residence had not constituted a valid contract. Crediting the husband with $12,000.00 he had paid to the wife toward purchase of the marital residence as payment toward a spousal support arrearage, the trial court ordered the husband to pay additional spousal support arrears at a rate of $300.00 per month and to pay the wife's attorney's fees. Specifically at issue on appeal is a provision the trial court included in the order, directing that the wife, the parties' minor child, and the wife's three foster children could remain in the marital residence until the parties' minor child, who was then eleven years of age, graduated from high school or became otherwise emancipated. Also finding that the husband had behaved in a harassing and intimidating manner toward the wife, the trial court granted the wife's request for a restraining order in part, limiting the number of times each day the husband could text the wife and his minor child. Seeking to have the provision at issue set aside, the husband filed a motion to alter or amend the judgment,

which the trial court denied. The husband has appealed. Having determined that the trial court's order impermissibly modified the MDA by creating an extended timeframe for sale of the marital residence not originally contemplated by the parties, we vacate the provision in the judgment allowing the wife to remain in the residence until the parties' minor child graduates from high school or is otherwise emancipated. Inasmuch as the husband has raised this sole issue on appeal, we expressly do not disturb the remainder of the trial court's judgment. We remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

E. Covington Johnston, Jr., Franklin, Tennessee, for the appellant, Michael Patrick McKay.

Shawn P. Sirgo, Fairview, Tennessee, for the appellee, Alecia Gaynell King McKay.

**OPINION**

I. Factual and Procedural Background

The petitioner, Alecia Gaynell King McKay ("Wife"), and the respondent, Michael Patrick McKay ("Husband"), were divorced by entry of final decree in the Williamson County Chancery Court ("trial court") on December 6, 2011. Two children had been born to the marriage, one an adult daughter at the time of the divorce, and the other a son, Q.M., who was then six years of age. In addition, Wife had three foster daughters residing with her, a nine-year-old and a set of eight-year-old twins. The parties entered into the MDA and a permanent parenting plan providing for Q.M.'s care, both of which were approved by the trial court and incorporated into the final decree. The permanent parenting plan provided that Husband would pay $606.00 per month to Wife for Q.M.'s support. According to the trial court's findings in its memorandum opinion and order in the instant action, the foster children had remained with Wife since the divorce and continued to reside with her throughout the proceedings.

Wife commenced the instant action when she filed a petition to enforce the divorce decree, hold Husband in contempt, and obtain a restraining order against Husband on March 19, 2015. In her petition, Wife sought, *inter alia*, an order requiring Husband to vacate the marital residence so that she could reside there with Q.M. and her

2

foster daughters (collectively, "the Children"), as well as Wife's mother, M.K.  At the time of the petition's filing, Wife, M.K., and the Children were residing in a rented, smaller home in Maury County, and the Children were in danger of losing the special needs schooling programs they were enrolled in within Williamson County.

It is undisputed that according to the MDA, Wife was to retain sole and exclusive possession of the marital residence until it was sold, and the residence was not to be placed on the market for sale until January 1, 2013, unless otherwise agreed by the parties in writing.  Pending sale of the marital residence, Husband was to deposit one-half of the monthly mortgage payment, or $800.00,[1] into Wife's personal checking account each month.  The MDA includes the following provision regarding the marital residence in relevant part:

> The parties and Wife's mother own a marital residence located at . . . Galloway Drive, Franklin.  [M.K.], Wife's mother is a mortgage holder, along with the parties.  Pursuant to the Agreed Order of September 20, 2010, Wife shall continue to have sole and exclusive possession of the marital residence until it is sold.  Pending the closing of the sale of the marital residence, Husband shall pay to Wife, by direct deposit into her checking account, one-half of the mortgage indebtedness payment due and owing each month on the property and furnish her one-half of said payment no later than five (5) days before the payment is due, with the exception of November and December, 2011 and the January 2012 payment, of which Husband shall be responsible for paying Wife One Thousand Dollars ($1,000.00) for each of those payments, for a total of $3,000.00, payable November 20, 2011, December 20, 2011, and January 20, 2011 [sic], all by direct deposit.  The obligation to pay Wife monthly, pursuant to this paragraph is hereby in lieu of alimony to Wife.

> * * *

> The parties agree that the property shall not be placed on the market for sale until January 1, 2013, unless otherwise agreed on by the parties, subsequent to the entry of the Final Decree of Divorce, in writing.  The parties shall either place the property on the market for sale by owners or mutually agree upon a real estate agent to sell the property.  In the event the parties mutually agree upon a real estate agent, the parties shall follow the advice of the agent concerning the listing price, and the acceptance of offers

---

[1] The MDA does not include the exact amount of the monthly mortgage payment.  Neither party disputes the trial court's finding in its memorandum opinion and order that one-half of the mortgage payment equaled $800.00.

to buy, and the making of offers to sell. At the closing of the sale of the property, after the payment of real estate commission, insurance, any taxes due on property, and any indebtedness encumbering the property, the parties will share the net equity proceeds equally, except that Wife shall be entitled to Three Thousand Two Hundred ($3,200.00) dollars from Husband's one-half net proceeds. Each party shall sign whatever documents are necessary to list the house for sale, and that are required to be executed at the closing of the sale. Neither party will incur any further indebtedness encumbering the property, and in the event that a lien exists on the property at the time of sale, the lien shall be paid by the party incurring or responsible for the indebtedness causing the lien.

Following entry of the divorce decree, Wife resided in the marital residence with the Children and M.K. until July 2013. During that timeframe, Husband resided in Texas. Wife testified during trial that she moved out of the marital residence in July 2013 because Husband had been harassing her regarding her parenting of Q.M. According to Husband's testimony, however, Wife desired to relocate because she was having problems with the homeowners' association and could not afford to maintain the residence.

It is undisputed that when Wife vacated the marital residence in July 2013, the parties orally agreed that Husband would pay Wife between $40,000.00 and $45,000.00 to purchase her interest in the residence. Husband paid Wife a total of $12,000.00 in three payments made between October 2013 and March 2014. On March 27, 2014, Wife drafted a handwritten receipt, presented as an exhibit during trial, which stated the following:

> I, Alecia McKay, have received from Michael McKay $12,000 so far, to date, March 27, 2014. This amt. is payment toward the purchase of the [marital residence].

The receipt was not signed by Husband. Husband acknowledged during trial that he made no further payments toward Wife's interest in the marital residence beyond the $12,000.00 memorialized by Wife's receipt.

Husband resided alone in the marital residence for approximately one year from October 2013 to October 2014. The parties' adult daughter and her fiancé subsequently moved into the marital residence with Husband until they were married in April 2015. At the time of trial, Husband resided in the marital residence by himself. The home had not been placed on the market, and M.K.'s name was still on the deed. The trial court noted in its memorandum and order that the parties had taken the mortgage loan out in M.K.'s

4

name because the parties had been unable to qualify for a home loan.[2]  According to the trial court's findings, at the time of the divorce decree's entry, the marital residence was appraised for $350,000.00 but required repairs estimated at approximately $35,000.00 to $40,000.00 in order to be ready for sale.  At that time, the parties owed approximately $216,000.00 on the mortgage.  At the time of the trial court's July 2016 order in the instant action, the marital residence had been appraised for $420,000.00 without functioning air conditioning, and the mortgage reflected an outstanding debt of approximately $205,000.00.

Regarding Husband's alleged harassment of Wife, Wife attached a collection of text messages to her petition, demonstrating that Husband's messages were often threatening and laced with profanity and that Husband often sent several messages within a short timeframe.  Wife asserted in her petition that she had agreed to sell her interest in the marital residence "[u]nder duress and in an effort . . . to stop [Husband's] ongoing abuse . . . ."  She further asserted that the MDA had never been amended to reflect an agreement for sale of her interest.  Wife also averred that Husband owed "in excess of $4,000.00" in arrears on child support, had collected insurance payments for water damage to the marital residence stemming from an air conditioner malfunction without making the corresponding repairs, and had made telephone calls to the Williamson County School System specifically to inform officials that Q.M. no longer resided in Williamson County.  Wife further stated in her petition that she had requested and received a grace period during which the Children would be able to stay in Williamson County schools while Wife sought to reestablish residence in the county.  Husband filed a response and counter-petition, denying all substantive allegations and requesting that the trial court amend the divorce decree and MDA to reflect the parties' oral agreement for Husband's purchase of Wife's interest in the marital residence.

The trial court conducted a bench trial on May 5, 2016.  Although no transcript of the trial is in the record, Husband's counsel filed a statement of the evidence, the accuracy of which is not in dispute on appeal.  The trial court entered its "Memorandum and Order" on July 22, 2016.  As pertinent to the issue raised on appeal, the court granted Wife's petition to enforce the MDA, ordering Husband to vacate the marital residence immediately and to make needed repairs, including replacing the air conditioning.  The court specifically found that the purported oral agreement between the parties for the sale of Wife's interest in the marital residence to Husband did not constitute a valid contract.  The court stated in pertinent part:

---

[2] Although Husband's counsel stated during oral argument before this Court that M.K. had conveyed her interest in the marital residence to the parties via quitclaim deed, the record contains no documentation of such a conveyance.

[Wife's] request for [Husband] to vacate the marital residence is well-taken. Pursuant to the MDA, [Wife] was to reside in the marital residence with the children until the home was sold. The home has not been sold. [Husband] has taken absolutely no steps to sell the home or to even get the home into a marketable condition.

In addition, [Husband] was to pay half of the monthly mortgage payment ($800) while [Wife] and the children were living in the marital residence. [Wife] was forced to leave the marital residence in the hopes of escaping [Husband's] harassment. Thus, it is because of [Husband's] wrong-doing that the plan to sell the marital residence did not materialize.

[Husband] seems to rely on the "agreement" the parties had for [Husband] to buy out [Wife's] share of the home. Such reliance is misplaced. The "agreement" [Wife] and [Husband] made for [Husband] to purchase [Wife's] interest in the marital residence was not a valid contract.

* * *

The "agreement" the parties signed did not contain an amount for which [Husband] would purchase the home.[3] Thus, it was not "sufficiently definite to be enforced." *Staubach* [*Retail Servs.-Se, LLC v. H.G. Hill Realty Co.*], 160 S.W.3d [521, 524] (Tenn. 2005)]. Further, it was not "sufficiently explicit" such that this Court can perceive what the parties' obligations are. . . . Here, the parties have not provided a "practicable method for determining [the] price or compensation" [(quoting *Vatt v. James*, 180 S.W.3d 99, 108 (Tenn. Ct. App. 2005) (in turn quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001))]. Thus, the contract is too indefinite and uncertain for enforcement.

In addition, the "agreement" was not signed by [Husband]. [Husband's] failure to sign the "agreement" results in there being no evidence of a "meeting of the minds of the parties in mutual assent to the terms" as required for a valid and enforceable contract. *See* [*Staubach*], 160 S.W.3d [at 524 (quoting *Doe*, 46 S.W.3d at 196)]. Furthermore, the MDA requires that any modifications be made in writing and signed by both parties.

---

[3] As the trial court subsequently notes, Husband did not sign Wife's receipt for the $12,000.00 paid toward her interest.

Moreover, this "agreement" is "against public policy." *See, Staubach*, [160 S.W.3d at 524 (quoting *Doe*, 46 S.W.3d at 196)]. [M.K.] has a vested interest in the marital residence and the parties should not be permitted to cut [M.K.] out of the proceeds of the sale of the home.

Finally, even if this "agreement" was a valid contract, it is not enforceable. [Wife] wrote this document and accepted the money from [Husband] out of duress because [Husband] had not paid child support or spousal support. [Wife] needed the money to support the family. . . . Here, [Wife] acted under economic duress when she entered into this "agreement" with [Husband]. Accordingly, this "agreement" is not an enforceable contract.

For all of these reasons, the Court finds that the document was not a valid contract. The $12,000 [Husband] paid to [Wife] shall be construed by the Court to be payment toward [Husband's] arrears for spousal support. [Husband] is hereby Ordered to vacate the premises immediately. [Wife] and the children are hereby permitted to move into the marital residence at . . . Galloway Drive, Franklin, Tennessee. [Wife] and the children may remain in this residence until [Q.M.] graduates High School or is otherwise emancipated.

(Additional internal citations omitted.)

The trial court also ordered Husband to pay additional spousal support arrears at a rate of $300.00 per month and to pay Wife's attorney's fees. Concerning the text messages presented during trial, the court specifically found that many of the messages that had been sent by Husband to Wife were "harassing, offensive, and vulgar . . . ." The court granted Wife's request for a restraining order in part, ordering Husband to text Q.M. no more than five times a day and to text Wife no more than two times per day. Upon Wife's counsel's affidavit, the trial court entered an order on December 12, 2016, awarding to Wife $8,858.49 in attorney's fees.

Husband filed a motion to alter or amend the judgment, confining his argument to an assertion that the trial court improperly modified the parties' MDA as to disposition of the marital residence by ordering that Wife and the Children could remain in the marital residence until Q.M. graduated from high school or was otherwise emancipated. Without further hearing, the trial court denied Husband's motion to alter or amend in an order entered August 18, 2016. Husband timely appealed.

## II.  Issue Presented

Husband presents one issue on appeal, which we have restated as follows:

Whether the trial court erred by modifying the parties' MDA when the court ruled that Wife and the Children could continue residing in the marital residence until Q.M., the parties' minor child, graduated from high school or became otherwise emancipated.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise.  *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).  We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Marital dissolution agreements are contractual and, once approved by the trial court, "become legally binding obligations on the parties."  *Long v. McAllister-Long*, 221 S.W.3d 1, 8-9 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Jan. 29, 2007) (explaining that with the two "notable exceptions" of child support and alimony, which remain modifiable by the courts, "the agreements in a marital dissolution agreement are enforceable contract obligations").  We review issues of contract interpretation *de novo*. *See Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). As this Court has previously explained:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language.  *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)).  A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide."  *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30

8

(rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)).  The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern.  *Planters Gin Co.*, 78 S.W.3d at 890.  The parties' intent is presumed to be that specifically expressed in the body of the contract.  "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy."  *Id*.  (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006).

### IV.  Modification of MDA

Husband contends that the trial court improperly modified the MDA when it ordered that Wife and the Children could reside in the marital residence until Q.M.'s graduation from high school or other emancipation.  In response, Wife asserts that the parties granted the trial court authority to modify the MDA because they each respectively requested modification of the provision concerning the marital residence.  She thereby argues that Husband waived his right to raise this issue when he requested that the trial court memorialize the parties' purported oral agreement for the sale of Husband's interest in the marital residence to Wife.  She also argues that the trial court properly gave her an expanded timeframe for sale of the home upon the court's finding that the parties' plan to sell the home had failed because of Husband's "wrong-doing."  Upon careful review, we conclude that the trial court lacked authority to modify the MDA by extending the time period for sale of the home beyond a reasonable timeframe anticipated by the parties' agreement in the MDA.

At the outset, we note that on appeal, Husband does not raise an issue regarding the trial court's finding that the parties' purported post-divorce agreement for sale of Wife's interest in the marital residence to Husband was invalid.  The trial court found, *inter alia*, that the parties' oral agreement was "too indefinite and uncertain for enforcement" and that Wife's handwritten receipt for $12,000.00 received from Husband toward purchase of the home was unenforceable because it did not include a total purchase price or Husband's signature.  As the court noted, the parties' MDA included the following provision:  "This Agreement may be altered, amended or cancelled only by instrument in writing signed by each of the parties, and this requirement cannot be waived by oral agreement."  The trial court also found that Wife had entered into the purported post-divorce agreement under duress.  Inasmuch as Husband has not appealed

the trial court's findings regarding the purported post-divorce agreement, we will address solely the parties' provision concerning the marital residence as set forth in the MDA.

Once an MDA is incorporated into a final decree, the trial court retains authority to modify spousal and child support but not to modify the parties' agreement as to distribution of marital property, which is contractual. *See Long*, 221 S.W.3d at 9. In support of his argument that the trial court improperly modified the MDA, Husband relies in part on this Court's recent decision in *Gibbs v. Gibbs*, No. E2015-01362-COA-R3-CV, 2016 WL 4697433 (Tenn. Ct. App. Sept. 7, 2016), in which this Court explained:

> The characterization of a marital dissolution agreement as both a contract between divorcing parties and as a part of the court's decree creates something of a legal anomaly. On one hand, courts have continuing statutory authority to modify certain provisions of a marital dissolution agreement related to child support and alimony when justified by changed circumstances. *See* Tenn. Code Ann. § 36-5-101(a)(1) (providing for the modification of child support for minor children); Tenn. Code Ann. § 36-5-121(a) (providing for the modification of certain alimony awards). On the other hand, subsequent modification of an agreement that retains its contractual nature would violate the Tennessee Constitution's prohibition against the impairment of contractual obligations. *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975) (citing Tenn. Const. art. I, § 18).

> In order to reconcile those competing interests, the Tennessee Supreme Court articulated the merger doctrine in *Penland v. Penland*, 521 S.W.2d 222 (Tenn. 1975). *Penland* involved a marital dissolution agreement in which the husband agreed to pay all educational expenses for the children beyond the high school level. *Id*. at 223. After the husband failed to pay any of the college expenses incurred by the parties' daughter, the wife filed a petition seeking to enforce the agreement. *Id*. The trial court ruled that the husband had no legal obligation to support the child after age 18 and granted summary judgment in his favor. *Id*. The Tennessee Supreme Court reversed. *Id*. at 225. In doing so, the court explained that when a marital dissolution agreement is incorporated into a divorce decree, only certain provisions of the agreement "merge" into a divorce decree and lose their contractual nature:

>> The authority of the courts to order child support and, if necessary, to enforce same by the process of contempt, is statutory, and generally exists only during minority. When the husband and wife contract with respect to the legal duty of

10

child support, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature.

> [T]he reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify. It follows, and we so hold, that only that portion of a property settlement agreement between husband and wife dealing with the legal duty of child support, or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a decree for divorce.

*Id*. at 224 (citations omitted). The court concluded that despite being incorporated into the divorce decree, the provision requiring the husband to pay college expenses was "a contractual obligation outside the scope of the legal duty of support during minority" and therefore not subject to modification by the courts. *Id*. at 224-25.

> Relying on *Penland*, Husband contends that because the property distribution provisions of the marital dissolution agreement at issue in this case retained their contractual nature, they must be enforced by suing for a breach of contract rather than by an action for contempt. As Husband correctly asserts, a provision related to the distribution of marital property does not lose its contractual nature by merger into the divorce decree and is therefore not subject to modification by the courts. *Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn. 1993).

2016 WL 4697433, at *4-5 (ultimately affirming the trial court's contempt order as a means of enforcing the real property provision in the parties' MDA while modifying the order to more closely track the requirements provided in the MDA).

In this case, the MDA provides that Wife "shall continue to have sole and exclusive possession of the marital residence until it is sold," with Husband paying to Wife "one-half of the mortgage indebtedness payment due and owing each month on the property" "in lieu of alimony." As to the timing of the home's sale, the parties agreed that "the property [would] not be placed on the market for sale until January 1, 2013, unless otherwise agreed on by the parties . . . ." The MDA further provides that the parties "shall either place the property on the market for sale by owners or mutually agree upon a real estate agent to sell the property." The parties further agreed that if they listed

the marital residence with a real estate agent, they would "follow the advice of the agent concerning the listing price, and the acceptance of offers to buy, and the making of offers to sell." The remainder of the MDA provision concerning the marital residence sets forth how the funds from the sale will be distributed, as well as the parties' agreement that they will execute all documents necessary to list the home for sale and close the sale and that they will not further encumber the property.

Therefore, although the MDA provides a date by which the parties could have, at the earliest, placed the marital residence on the market for sale (January 1, 2013), it does not provide a date by which the parties are required to place the marital residence on the market. Upon careful review, we determine that the language of the provision does anticipate placement of the marital residence on the market within a reasonable timeframe after January 1, 2013. *See Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993), *perm. app. denied* (Tenn. June 28, 1993) ("Where the parties have not clearly expressed the duration of the contract, or where the duration of the contract is indefinite, the courts will imply that they intended performance to continue for a reasonable time."). Nothing in the MDA provision indicates that the parties anticipated waiting to sell the marital residence until after Q.M., who was six years of age when the divorce decree was entered, would graduate from high school or become otherwise emancipated, approximately twelve years later. Because the trial court did not retain authority to modify a contractual provision for other than spousal or child support, *see Long*, 221 S.W.3d at 9, we conclude that the trial court did not have the authority to modify the parties' MDA to extend the timeframe for sale of the home beyond a timeframe that reasonably may be inferred from the parties' original agreement.

In arguing that Husband waived his right to raise this issue when he requested in his counter-petition that the trial court modify the MDA to memorialize the parties' purported post-divorce agreement, Wife is essentially asking this Court to determine that Husband no longer has a right to the benefit of the original agreement he entered into despite the trial court's ultimate finding that the parties' post-divorce "agreement" was invalid. Wife's argument in this regard is unavailing. In the absence of a valid post-divorce agreement, written and executed by both parties as required by the MDA, the original MDA provision regarding the marital residence retains its contractual nature and remains in effect. *See, e.g. Hannahan v. Hannahan*, 247 S.W.3d 625, 627 (Tenn. 2007), *perm. app. denied* (Tenn. Oct. 22, 2007) (concluding that although "the parties' agreement at the time of divorce as to disposition of the marital residence was not subject to modification by the trial court," "it was subject to modification *by the parties*"). Furthermore, contrary to Wife's ancillary argument that Husband is "estopped" from requesting the alternative relief of enforcement of the original MDA provision, "alternative pleadings are expressly permitted, regardless of consistency." *See Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) ("Wife is not estopped from seeking to

enforce the agreement simply by the fact that she asked for, in the alternative, an equitable division of the marital property.").

Wife also asserts that the trial court did not err in ordering the extended timeframe for her occupation of the marital residence due to Husband's misconduct. In addition to finding that Husband owed arrearages to Wife for spousal support and child support and that the purported post-divorce agreement for sale of Husband's interest in the home to Wife was invalid, the trial court found that Husband had (1) exerted duress that caused Wife to move out of the marital residence, (2) breached the provision in the MDA concerning sale of the marital residence by continuing to live in the residence himself and failing to place the residence on the market or ready it for sale, and (3) failed to make repairs to the air conditioning in the marital residence for which he had collected insurance funds. The court thereby found that the plan to sell the marital residence contained in the MDA had not come to fruition due to Husband's "wrong-doing" and that he had breached the parties' contract in the MDA as to the marital residence.

On appeal, Husband has not raised an issue disputing the trial court's finding that he breached the original agreement in the MDA for the parties to sell the marital residence. The judicial remedies for breach of a contractual provision in the MDA that does not remain in the trial court's control for modification, in other words, a provision other than one for child or spousal support, sound in contempt and breach of contract. *Long*, 221 S.W.3d at 9-10, nn.9-10 (explaining that "[b]asic child support for minor children and long-term alimony are examples of provisions that remain in the court's control and are subject to modification" while examples of provisions that do not remain in the trial court's control for modification include "alimony in solido awards, provisions involving the disposition of the marital estate, and agreements for child support in excess of the support required by law"). In her petition, Wife sought enforcement of the MDA provision regarding the marital residence, which the trial court properly granted in ruling that Husband must vacate the residence while permitting Wife and the Children to return to the residence until it is sold.

However, the trial court went beyond its authority to grant a remedy to Wife when it modified a contractual provision it did not have the authority to modify by extending the timeframe for sale of the marital residence beyond a reasonable time period contemplated in the MDA. *See Long*, 221 S.W.3d at 9 ("Because the parties are not entitled to a marital dissolution agreement that is different from the one they negotiated, we must avoid rewriting the agreement under the guise of 'construing' it."). We vacate the provision of the trial court's judgment permitting Wife and the Children to remain in the marital residence until Q.M. graduates from high school or is otherwise emancipated.

Noting that the applicable MDA provision is missing the element of an ending date for performance, we remand for the trial court to determine a reasonable date by which the parties shall put into effect their original agreement in the MDA to place the marital residence on the market for sale. As this Court has explained:

> [W]here the parties have unambiguously set out the terms of their agreement, courts will enforce those terms as written, regardless of any inequity arising from that enforcement. On the other hand, courts may incorporate a reasonableness requirement into any contract. *Moore v. Moore*, 603 S.W.2d 736 (Tenn. Ct. App. 1980). In *Moore*, this court was called upon to interpret a provision in a real estate sales contract that made the contract contingent upon the buyer's "ability to obtain adequate financing." The proof showed that although the buyer was unable to secure financing in Shelbyville, where the property was located, he was able to obtain adequate financing in Nashville. In this factual context, the court stated that, "a qualifying word which may be read into every contract is the word 'reasonable,' or its equivalent 'reasonably.'" *Id.* at 739. Consequently, the court interpreted the contingency as meaning "reasonable ability to obtain sufficient financing by ordinary, recognized means." *Id.* The court then found that the contract was subject to reasonable application of the words used therein "according to the known situation of the parties," but was not ambiguous. *Id.*

> The *Moore* court's language that reasonableness may be read into every contract has been quoted, cited, and applied in a number of cases decided by this court. *See, e.g.*, *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995) (holding that insurance company's demand for production of financial records and assertion that insured's failure to produce was a breach of the cooperation clause of the insurance contract could be considered unreasonable). In fact, in some instances, we have stated that the qualifying word "reasonable" must be read into every contract. *Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993). In *Minor*, <u>because the contract did not include a time for performance, a reasonable time was implied</u>, based upon *Moore* and upon the well-settled rule that missing contract terms may be implied. *Id.* In *McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194, 198 (Tenn. Ct. App. 1991), this court held that "the extent of contractual obligations should be tempered by a 'reasonableness' standard," citing *Moore*.

*Pylant v. Spivey*, 174 S.W.3d 143, 152 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. June 1, 2004) (underlined emphasis added); *see, e.g., Buckner v. Goodman*, No. E2016-

00150-COA-R3-CV, 2016 WL 7479141, at \*11 (Tenn. Ct. App. Dec. 29, 2016) (affirming the trial court's inference of a reasonable date of performance based on parol evidence surrounding the original agreement when the parties had failed to include a specific date of performance in their contract).

In this case, the trial court may conduct an evidentiary hearing on remand as necessary to determine a reasonable date by which the parties must place the marital residence on the market.[4] We emphasize that our decision does not disturb the remainder of the trial court's judgment, including the trial court's direction that Wife and the Children are permitted to occupy the marital residence until the residence is sold pursuant to the applicable provision of the MDA.

## V.  Conclusion

For the reasons stated above, we vacate the provision of the trial court's judgment permitting Wife and the Children to remain in the marital residence until Q.M. graduates from high school or is otherwise emancipated. Inasmuch as this provision constitutes the sole issue raised on appeal, we do not disturb the remainder of the trial court's judgment, including the grant of Wife's petition to enforce the MDA provision regarding the marital residence and thus allow Wife and the Children to reside in the marital residence until it is sold. This case is remanded to the trial court for proceedings consistent with this opinion and collection of costs below. We specifically remand for the trial court to determine a reasonable date by which the parties shall put into effect their original agreement in the MDA to place the marital residence on the market for sale. Because the applicable provision of the MDA was missing the element of an ending date for performance, the trial court may conduct an evidentiary hearing to determine a reasonable date by which the parties must place the marital residence on the market. Costs on appeal are taxed one-half to the appellant, Michael Patrick McKay, and one-half to the appellee, Alecia Gaynell King McKay.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[4] In her brief on appeal, Wife avers that Husband had, at the time of the brief's submission, failed to comply with the trial court's order to make repairs to the marital residence, replace the air conditioning in the residence, and pay his spousal support arrearage. She thereby argues that Husband should be precluded from relief on remand due to "unclean hands." Noting that Wife has not filed a motion for consideration of post-judgment facts pursuant to Tennessee Rule of Appellate Procedure 14, we decline to consider purported facts occurring after the judgment and outside the record. *See* Tenn. R. App. P. 13(c).